UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SAMPSON BLAIR,

        Plaintiff,

    v.

SUNY UNIVERSITY AT BUFFALO and
DEBRA STREET,

        Defendants.

**DECISION AND ORDER**

17-CV-1317S

## I. INTRODUCTION

In this action, Plaintiff Sampson Blair seeks damages and injunctive relief against SUNY University at Buffalo ("SUNY") and the chairperson of its Sociology Department, Debra Street, for violations of his rights under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). Before this Court is Defendants' Motion to Dismiss Blair's complaint for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to Rules 12 (b)(1) and 12 (b)(6) of the Federal Rules of Civil Procedure. (Docket No. 4.) For the following reasons, Defendants' motion is granted in part and denied in part.

## II. BACKGROUND

This Court assumes the truth of the following factual allegations contained in Blair's complaint. See Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740, 96 S. Ct. 1848, 48 L. Ed. 2d 338 (1976); see also Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 63 (2d Cir. 1997).

Sampson Blair is a tenured professor in the Sociology Department of defendant

SUNY. (Complaint, ¶ 6.) He has Crohn's disease and an illness that results in low blood volume and causes dizziness. (Id., ¶¶ 20, 23.) Stress exacerbates his Crohn's disease. (Id., ¶ 27.) Defendant Debra Street has been the chairperson of SUNY's Sociology Department since 2012. (Id., ¶ 12.) The chairperson of the department selects what classes professors will teach. (Id., ¶ 11.) Since Street was appointed chairperson, Blair has not served on any academic committees. (Id., ¶ 13.)

At some point, through a physician's request, Blair requested smaller class sizes and allowance for time for frequent trips to the bathroom to manage his Crohn's disease. (Id., ¶ 28.) In Fall 2015, Blair met with Randall Borst, SUNY's Director of Accessibility Resources, and requested the use of a high chair or stool and classes in close proximity to his office, to accommodate his medical issues. (Id., ¶¶ 32, 34, 35.) Borst did not transmit this request to Blair's department "for months." (Id., ¶ 36.)

Blair informed Street of his physician's requests on May 11, 2016. (Id., ¶ 37.) At that time, he requested classrooms closer to the parking lot, a tall stool in his classrooms, and a graduate assistant. (Id., ¶ 38.) Blair had a stool available to him during the spring semester, 2016. (Id., ¶ 61.) In response to these requests, Street stated, "no." (Id., ¶ 39.) Street "wrongly disbelieved that [Blair] was not disabled." (Id., ¶ 40.)

On August 5, 2016, Street agreed to Blair's request for classes closer to the parking lot and a tall stool. (Id., ¶ 46.) She additionally stated that he could teach large classes with a teaching assistant, or small classes with no teaching assistant. (Id., ¶ 49.) Street stated that Blair could only have these accommodations if he "verified in writing that he was not instructing courses at any other institution." (Id., ¶ 48.)

On August 26, 2016, Blair met with SUNY Director of Equity, Diversity, and

Inclusion Sharon Nolan-Weiss. (Id., ¶ 54.) Nolan-Weiss promised that someone in the Dean's office would pursue the issue of Blair's accommodations. (Id., ¶ 57.) On September 6, 2016, someone directed Blair to ask custodial services for a stool. (Id., ¶ 59.) Blair refused, because he preferred to keep his request confidential. (Id., ¶ 60.) On October 14, 2016, Blair met with Nolan-Weiss again. (Id., ¶ 62.) Nolan-Weiss believed that a stool had been provided to Blair. (Id., ¶ 63.) On October 20, 2016, Blair received a stool in his classrooms. (Id., ¶ 68.) On November 4, 2016, Blair received a letter from Nolan-Weiss. (Id., ¶ 79.) The letter stated that Blair had received smaller classes and morning classes, and that there was a plan for a graduate assistant, who would be "limited in the scope of their duties." (Id., ¶¶ 73-79.). Such an assignment of a graduate assistant was different from past departmental practice. (Id., ¶ 78.) Nolan-Weiss did not address the issue of the stool. (Id., ¶ 76.)

At some point, Blair was assigned to teach two introductory courses for the spring semester of 2017. (Id., ¶ 69.) The assignment of introductory courses to a tenured professor is "unusual" and represents a "diminishment in stature." (Id., ¶ 70.) Blair was also assigned to teach Sociology 101 ("Soc 101") for the academic year 2017-2018. (Id., ¶ 85.) Soc 101 is usually taught by graduate students, and Blair's assignment to teach it was a "diminishment in stature." (Id., ¶ 84.) These events caused stress and aggravated Blair's condition. (Id., ¶¶ 86-87.) He was hospitalized due to complications of Crohn's disease in December 2016. (Id., ¶ 88.)

## III. DISCUSSION

Plaintiff alleges twelve causes of action against Defendants SUNY and Blair. He alleges that SUNY discriminated against him based on his disability, in violation of the

ADA and the RA (first and second causes of action). (Complaint, Docket No. 2, ¶¶ 89-96, 97-105.) He alleges that SUNY retaliated against him for requesting disability accommodations, in violation of the ADA and the RA (third and fourth causes of action). (Id., ¶¶ 106-113.) He alleges that SUNY is liable to him for discrimination in the form of a hostile work environment, in violation of the ADA and the RA (fifth and sixth causes of action). (Id., ¶¶ 114-118.) He alleges that Defendant Street is liable to him under 42 U.S.C. § 1983 for discrimination in violation of the ADA and RA (seventh and eighth causes of action). (Id., ¶¶ 119-125.) He further alleges that Defendant Street is liable to him under § 1983 for retaliation in violation of the ADA and RA (ninth and tenth causes of action). (Id., ¶¶ 126-132.) Finally, he alleges that Defendant Street is liable to him under § 1983 for hostile work environment discrimination in violation of the ADA and RA (eleventh and twelfth causes of action). (Id., ¶¶ 133-139.)

Defendants move to dismiss Blair's claims for lack of subject-matter jurisdiction as to SUNY under Rule 12 (b)(1) and for failure to state a claim upon which relief can be granted under Rule 12 (b)(6) of the Federal Rules of Civil Procedure.

## A.    Legal Standards

### 1. Rule 12 (b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000), see Fed.R.Civ.P. 12(b)(1). A plaintiff asserting subject-matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. Malik v. Meissner, 82 F.3d 560, 562 (2d Cir.1996).

The doctrine of sovereign immunity is jurisdictional in nature. <u>See</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). If a state is immune from suit pursuant to the Eleventh Amendment, a federal court lacks jurisdiction over it. <u>See</u> <u>Seminole Tribe of Fla. v. Florida</u>, 517 U.S. 44, 76, 116 S. Ct. 1114, 1133, 134 L. Ed. 2d 252 (1996) (dismissing a suit against state of Florida for lack of subject-matter jurisdiction because of Florida's sovereign immunity from suit pursuant to the Eleventh Amendment.)

## 2. Rule 12 (b)(6)

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12 (b)(6). Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8(a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 557, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. <u>Goldstein v. Pataki</u>, 516 F.3d 50, 56 (2d Cir. 2008); <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007). Legal conclusions, however, are not afforded the same presumption of truthfulness. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.")

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 570). Labels, conclusions, or "a formulaic recitation

of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 556 U.S. at 678. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. Id.; Fed. R. Civ. P. 8(a)(2). Well-pleaded allegations in the complaint must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

A two-pronged approach is thus used to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). This examination is context-specific and requires that the court draw on its judicial experience and common sense. Iqbal, 556 U.S. at 679. First, statements that are not entitled to the presumption of truth—such as conclusory allegations, labels, and legal conclusions—are identified and stripped away. See id. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. Id.

**B.    Claims against SUNY**

**1.  ADA Claims against SUNY (first, third, and fifth causes of action)**

Defendants argue that this Court lacks jurisdiction over SUNY under Title I of the ADA, because SUNY is entitled to sovereign immunity as an entity of New York State.

Blair argues that, even if SUNY has sovereign immunity, it still can be reached through a suit against Street in her official capacity pursuant to Ex parte Young.

The Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

The Eleventh Amendment also bars suit against a state by its own citizens. Islander E. Pipeline Co., LLC. v. Conn. Dep't of Envt'l Prot., 482 F.3d 79, 88–89 (2d Cir. 2006); see also Seminole Tribe, 517 U.S. at 54 (citing Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)).

Pursuant to this immunity, a state can be held liable in federal court only if it has consented to suit, or if Congress has abrogated its immunity pursuant to Congress's powers under § 5 of the Fourteenth Amendment. Will v. Michigan Dep't of State Police, 491 U.S. 58, 66, 109 S. Ct. 2304, 2309–10, 105 L. Ed. 2d 45 (1989). The Supreme Court has held that Congress has not abrogated the states' sovereign immunity from suit under Title I of the ADA, which covers employees' rights. Bd. of Trustees of Univ. of Alabama v. Garrett, 531 U.S. 356, 374, 121 S. Ct. 955, 967–68, 148 L. Ed. 2d 866 (2001).

Blair's suit arises under Title I of the ADA, since he is an employee suing his employer for failing to make an accommodation. Mary Jo C. v. New York State & Local Ret. Sys., 707 F.3d 144, 171 (2d Cir. 2013) ("[W]e conclude that the statute unambiguously limits employment discrimination claims to Title I. A public employee may not bring a Title II claim against his or her employer, at least when the defendant employer employs fifteen or more employees."). Under Garrett, New York has sovereign immunity

7

from Blair's suit. For Eleventh Amendment purposes, SUNY "is an integral part of the government of the State [of New York] and when it is sued the State is the real party." State Univ. of New York v. Syracuse Univ., 285 A.D. 59, 61, 135 N.Y.S.2d 539, 542 (3d Dep't 1954). As an integral part of New York State, SUNY is also immune from Blair's suit, pursuant to Garrett, and because it has not consented to suit in a federal forum. Dube v. State Univ. of New York, 900 F.2d 587, 594–95 (2d Cir. 1990). This Court therefore does not have jurisdiction over Blair's ADA claims against SUNY.

Blair concedes that SUNY has sovereign immunity from suits for damages by individuals under the Eleventh Amendment, but argues that he may still reach SUNY through a suit against Street in her official capacity for prospective injunctive relief. (Docket No. 6 at 4.)

Although the Eleventh Amendment bars suits for damages by individuals against states, Title I of the ADA can be enforced against the states "by the United States in actions for money damages, as well as by private individuals in actions for injunctive relief under Ex parte Young." Garrett 531 U.S. at 374, n. 9. Under Ex parte Young, a plaintiff can sue state officials in their official capacities for prospective equitable relief to remedy an ongoing violation of federal law. Abdur-Raheem v. Selsky, 598 F. Supp. 2d 367, 369 (W.D.N.Y. 2009) (citing Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 438, 124 S.Ct. 899, 157 L.Ed.2d 855 (2004)); Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L.Ed. 714 (1908).The purpose of this exception is to "ensure that the doctrine of sovereign immunity remains meaningful, while also giving recognition to the need to prevent violations of federal law." Idaho v. Coeur d'Alene Tribe, 521 U.S. 261, 269, 117 S. Ct. 2028, 138 L.Ed.2d 438 (1997).

Whether a litigant's claim falls under the <u>Ex parte Young</u> exception to the Eleventh Amendment's bar against suing a state is a "straightforward inquiry" that asks whether the complaint (1) alleges an ongoing violation of federal law and (2) seeks "relief properly characterized as prospective." <u>Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.</u>, 535 U.S. 635, 645, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2002).

Defendants argue that Blair has not alleged an ongoing violation, and has not sought prospective injunctive relief. (Docket No. 7 at 2.) Blair argues that he is seeking the injunctive relief specified in his complaint. (Docket No. 6 at 5.)

Addressing the second prong of the <u>Ex parte Young</u> analysis, this Court finds that Blair has not sought "relief properly characterized as prospective." <u>Verizon</u>, 535 U.S. at 645. Blair's prayer for relief asks for lost compensation and benefits, damages for emotional distress, the costs of the action, punitive damages for Defendants' intentional violation of his rights, and "injunctive relief as this Court deems just and equitable." (Docket No. 2 at 13.)

Blair does not allege that he has lost any compensation, so this Court cannot address that request. Damages and costs are not "prospective injunctive relief." And Blair has not sought any specific form of injunctive relief. He has not, therefore, met the pleading requirement for a suit pursuant to <u>Ex parte Young</u>. <u>See</u> <u>Falcon v. City Univ. of N.Y.</u>, 2016 U.S. Dist. LEXIS 92396 at *25 (E.D.N.Y. July 15, 2016) ("The proposed SAC does not assert an explicit claim for reinstatement or any other kind of prospective injunctive remedies. The only reference to any kind of injunctive relief is a single mention of the phrase alongside every other form of damages remotely available to the Plaintiff, including, 'compensatory, emotional, psychological and punitive damages, lost

9

compensation, front pay, back pay, liquidate damage [sic].' … [T]his is not the kind of prospective injunctive relief authorized by Ex parte Young.")

This Court will therefore dismiss Blair's ADA claims both against SUNY directly and as a suit for injunctive relief against Street in her official capacity pursuant to Ex parte Young.

### 2. Rehabilitation Act Claims against SUNY (second, fourth, and sixth causes of action)

#### a. RA discrimination claim against SUNY (second cause of action)

Defendants argue that Blair has not stated a claim for discrimination under the RA, because he has not claimed that he was "excluded from his job" as required by the RA. Defendants additionally argue that Blair has not pleaded that he is disabled within the meaning of the RA, that he suffered an adverse employment action, or that the adverse action was imposed because of his disability.[1] Blair argues that Crohn's disease and low blood volume qualify as disabilities within the meaning of the RA, that the denial of his accommodation suffices as an adverse action, and that he has alleged that the adverse action was directly linked to his disability.

Section 504 of the RA provides:

No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

---

[1] SUNY's liability under the RA is not at issue here. The RA, enacted under Congress's spending authority, makes entities liable as a condition of their acceptance of federal funds. "New York's continued acceptance of federal funds on behalf of [SUNY] constitutes a waiver of sovereign immunity as to all of plaintiff's Rehabilitation Act claims." Degrafinreid v. Ricks, 417 F. Supp. 2d 403, 414 (S.D.N.Y.), on reconsideration, 452 F. Supp. 2d 328 (S.D.N.Y. 2006).

29 U.S.C. § 794(a); Sedor v. Frank, 42 F.3d 741, 745 (2d Cir. 1994).

A failure to make reasonable accommodations for an employee's disability is a recognized form of discrimination. Lyons v. Legal Aid Soc., 68 F.3d 1512, 1515 (2d Cir.1995). To state a claim for failure to accommodate, a plaintiff must allege that "(1) plaintiff is a person with a disability under the meaning of the statute; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 96–97 (2d Cir. 2009).

An employer must make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A); Henrietta D. v. Bloomberg, 331 F.3d 261, 273 (2d Cir. 2003) (applying § 12112(b)(5)(A) in Rehabilitation Act context).

Defendants first argue that Blair has not alleged that he was excluded from his job, and therefore has not stated a claim for discrimination. (Docket No. 4-1 at 9, 12.) But given that failure to accommodate is a recognized form of discrimination, this argument is unavailing. Blair need only allege sufficiently that Defendants failed to accommodate his disability.

Defendants next argue that Blair has not alleged a disability. (Docket No. 4-1 at 6-8, 10.) Blair argues that his Crohn's disease and low blood volume qualify as a disability because they significantly limit his bowel and circulatory functions. (Docket No. 6 at 9.)

11

To qualify as a disability, a medical condition must "substantially limit a major life activity." Waterman, 2016 U.S. Dist LEXIS 61995, at *24 (W.D.N.Y. May 9, 2016). Major life activities include "the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine and reproductive functions." 42 U.S.C. § 12102(2)(A).

Blair has alleged that he has Crohn's disease and "an illness that resulted in low blood volume." (Complaint, ¶¶ 20, 23.) Although Blair does not provide the symptoms of Crohn's disease in his complaint, he refers to a need for "frequent visits to the bathroom" to manage his Crohn's disease. It is also known that Crohn's disease causes "inflammation of [the] digestive tract, which can lead to abdominal pain, severe diarrhea, fatigue, weight loss and malnutrition."[2] This is sufficient to allege that Blair's Crohn's disease limits "the operation of a major bodily function," that is, his bowels. Additionally, his allegation of "low blood volume" suffices to allege that his circulatory system is limited. Blair has sufficiently alleged a disability within the meaning of the RA.

Defendants next argue that Blair has not alleged that he was denied a reasonable accommodation, because he has alleged only a delay, not a denial, of accommodations. (Docket No. 4-1 at 13-14.) Blair argues that he sufficiently pleaded the necessity of the accommodations, and that he has alleged the denial, obstruction, and delay of his requests. (Docket No. 6 at 14, 11.)

Under the RA, an employer "shall make reasonable accommodation to the known

---

[2]https://www.mayoclinic.org/diseases-conditions/crohns-disease/symptoms-causes/syc-20353304, accessed 1/28/2020 at 12:26 PM.

physical or mental limitations of an otherwise qualified handicapped applicant or employee unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of its program." 34 C.F.R. § 104.12(a); 45 C.F.R. § 84.12(a); see Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 136 (2d Cir. 1995).

The reasonableness of an accommodation is a question of fact, not of law, and must be determined by examining the context and nature of the request. See Borkowski v. Valley Cent. Sch. Dist, 63 F.3d 131, 138–40 (2d Cir.1995) (vacating summary judgment because determination as to whether a particular accommodation is "reasonable" within the meaning of the Rehabilitation Act requires a fact-specific inquiry to be conducted on an individualized, case-by-case basis); Staron v. McDonald's Corp., 51 F.3d at 356 (reversing Rule 12(b)(6) dismissal because inquiry was required into the nature of the disability in question and the cost of implementation).

Defendants' arguments concerning the reasonableness of the accommodations Blair requested therefore do not warrant dismissal at this stage.

But this Court agrees with Defendants that Blair has failed to state the crux of a denial-of-accommodation claim: an actual denial. A delay can be a denial, but only if defendant was motivated by discriminatory intent. Manessis v. New York City Dep't of Transp., No. 02 CIV. 359 (SAS), 2003 WL 289969, at *17 (S.D.N.Y. Feb. 10, 2003), aff'd sub nom. Manessis v. Chasin, 86 F. App'x 464 (2d Cir. 2004). Discriminatory intent can be found when the delay is unreasonable. Wildman v. Verizon Corp., No. 1:05-CV-899 FJS/DRH, 2009 WL 104196, at *2 (N.D.N.Y. Jan. 14, 2009). Courts have found delays of from three weeks to seven months, and those clearly caused by oversight instead of discriminatory intent, to be reasonable. Wildman, 2009 WL 104196 at *2 (four-month

delay in providing ergonomic chair was not unreasonable); <u>Saunders v. Queensborough</u> <u>Cmty. Coll.</u>, No. 13 CV 5617 PKC RML, 2015 WL 5655719, at *7 (E.D.N.Y. Sept. 24, 2015) ("Even liberally construed, however, there is nothing in Plaintiff's Complaint to suggest that the seven-month delay she experienced was motivated by discriminatory intent, bad faith, or obstructionism.").

Regarding the request for a stool, Blair alleges that he had a stool in his classrooms the "previous semester" (presumably Spring 2016), so his claim can only refer to the time between around May 2016 and October 20, 2016. (Complaint, ¶ 61.) He does not allege that he taught over the summer of 2016. His claim therefore appears to refer only to the time between August 2016 and October 20, 2016. This at most five-month delay in giving Blair his requested stool does not suffice to allege discriminatory intent.

Regarding Blair's other requests, he does not allege that he did not get classes closer to his office, or that he was denied frequent bathroom breaks. He alleges that he was given classes near a parking lot. (Complaint, ¶ 46.) He argues that the introductory classes he was assigned to teach diminished his stature, but not that they failed to accommodate his alleged disability. (<u>See</u> Docket No 6 at 12.)

This Court finds that Blair has not sufficiently alleged that Defendants denied his requested accommodations. Defendants' Motion to Dismiss will therefore be granted as to Blair's RA discrimination claim against SUNY.

### b. RA retaliation claim against SUNY (fourth cause of action)

Defendants argue that Blair has not stated a claim for RA retaliation because he has not alleged the adverse employment action required to state a claim. Blair argues that the denial of accommodations, the conditioning of the accommodations on an "illegal

condition precedent," and being assigned to teach Soc 101 all qualify as adverse actions.

To state a claim for retaliation under the RA, a plaintiff must allege that (1) he engaged in a protected activity; (2) the employer was aware of the activity; (3) an adverse employment action occurred with respect to the plaintiff; and (4) a causal connection exists between the protected activity and the adverse employment action. Valtchev v. City of N.Y., 400 F. App'x 586, 589 (2d Cir. 2010).

A request for accommodations suffices to allege a protected action. Weixel v. Bd. of Educ. of City of N.Y., 287 F.3d 138, 149 (2d Cir. 2002) ("[P]laintiffs … allege that they were seeking reasonable accommodation of Rose's disability—which constitutes protected activity under Section 504/ADA.").

 "In the context of a retaliation claim, an adverse employment action is any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination." Frantti v. New York, No. 1:16-CV-810, 2019 WL 5580319, at *27–28 (N.D.N.Y. Oct. 29, 2019). While the standard previously required a plaintiff to allege a material change in conditions, the current standard looks only at "whether the [alleged adverse action] to which [the plaintiff] was subjected could well have dissuaded a reasonable employee in his position from complaining of unlawful discrimination." Davis-Garett v. Urban Outfitters, Inc., 921 F.3d 30, 43–44 (2d Cir. 2019); Burlington N. & Santa Fe Rwy. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006).

A mere denial of a requested accommodation, by itself, does not suffice as an adverse employment action. Sosa v. New York City Dep't of Educ., 368 F. Supp. 3d 489, 496 (E.D.N.Y. 2019) ("While courts may consider the underlying conduct of an alleged failure to accommodate, a failure to accommodate, by itself, is not sufficient for purposes

of establishing an adverse employment action.") (internal quotations and citations omitted).

"A causal connection in retaliation claims can be shown either (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Natofsky v. City of New York, 921 F.3d 337, 353 (2d Cir. 2019). The temporal relation between the protected activity and the adverse action must be sufficiently close. See, e.g., Delgado v. Triborough Bridge & Tunnel Auth., 485 F. Supp. 2d 453, 461–62 (S.D.N.Y. 2007) (3 years too long to suggest causation); Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273–74, 121 S. Ct. 1508, 149 L. Ed.2d 509 (2001) (20 months too long to show causation, and noting that 3 months was too long to suggest causation).

Blair has alleged that he engaged in a protected activity when he requested accommodations. See Weixel, 287 F.3d at 149. He has sufficiently alleged that Defendants were aware of his request when he asked Borst, Street, and Nolan-Weiss for various accommodations.

As to the third element of his claim, Blair alleges that he suffered several adverse actions: (1) the denial of his requested accommodations; (2) not being placed on committees; (3) being required to sign a statement about other employment as a condition of receiving accommodation; and (4) being assigned to teach introductory lecture classes and Soc 101. (Complaint, ¶¶ 13, 47-48, 82-86.)

This Court finds that the denial alone, if there indeed was one, does not suffice for

a retaliation claim. See Sosa, 368 F. Supp. 3d at 496. Because Blair alleges that his non-placement on committees began in 2012 with Street's tenure as chairperson, he has not alleged its connection to his request for accommodations. (See Complaint, ¶ 13.) Blair does not claim that Street's asking him to sign a statement had any impact on him, so he has failed to plead an action that might deter a reasonable employee from requesting accommodation. See Davis-Garett, 921 F.3d at 43-44.

However, this Court finds that Blair's assignment to teach introductory classes and Soc 101 qualifies as an adverse employment action, because the accompanying loss of status might deter a reasonable employee from requesting an accommodation. This Court therefore finds that Blair has plausibly alleged an adverse action.

This Court further finds that Blair plausibly alleged causation, because, drawing all inferences in his favor, he has alleged that the assignment of the introductory courses took place within several months of his requests.

Because Blair has stated a claim against SUNY for RA retaliation, Defendants' motion to dismiss Blair's complaint on this ground will be denied.

### c. RA hostile work environment claim against SUNY (sixth cause of action)

Defendants argue that Blair has not stated a claim for hostile work environment discrimination under the RA because he has not alleged a sufficiently hostile and abusive workplace. Blair argues that he sufficiently alleges hostility with the denial of his requests, the "illegal condition precedent" upon which Street conditioned his accommodation (her requirement that he sign a statement that he was not teaching elsewhere), and his diminishment in stature.

The Second Circuit "has not yet decided whether a hostile work environment claim

may be made under the ADA." <u>Hinz v. Vill. Of Perry</u>, 667 F. App'x 3, 4 (2d Cir. 2016); <u>Wesley–Dickson v. Warwick Valley Cent. Sch. Dist.</u>, 586 Fed.Appx. 739, 745 n. 2 (2d Cir. 2014); <u>see also</u> <u>Preston v. Bristol Hosp.</u>, 645 F. App'x 17, 20 n. 3 (2d Cir. 2016). District courts in this Circuit, however, have held that a hostile work environment claim is actionable under the ADA and RA. <u>Monterroso v. Sullivan & Cromwell, LLP</u>, 591 F. Supp. 2d 567, 584 (S.D.N.Y. 2008). Courts apply the standards applicable to a hostile work environment claim in the Title VII context. <u>See</u> <u>Wesley–Dickson</u>, 586 Fed. Appx. at 746. The standard is a "demanding one." <u>Monterroso</u>, 591 F. Supp. 2d at 584–85.

To state a hostile work environment claim, a plaintiff must allege (1) that "the workplace is permeated with discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" and (2) that "a specific basis exists for imputing the conduct that created the hostile environment to the employer." <u>Lekettey v. City of New York</u>, 637 Fed. Appx. 659, 661 (2d Cir. 2016) (internal quotation marks and citation omitted). Isolated incidents or offensive comments, while condemnable, do not establish an abusive and hostile workplace environment. <u>Robinson v. Dibble</u>, 613 Fed. Appx. 9, 13 (2d Cir.2015) (summary order) (sporadic offensive comments by coworkers related to worker's gender and mental health issues did not state a hostile work environment claim). <u>See also</u>, <u>Dollinger v. New York State Ins. Fund</u>, 726 F. App'x 828, 831 (2d Cir. 2018) (summary order) (one harassing communication referring to plaintiff's HIV/AIDS did not suffice to allege pervasive conditions); <u>Tolbert v. Smith</u>, 790 F.3d 427, 439 (2d Cir. 2015) (two comments, only one of which explicitly referred to race, and incidents with no causal connection to race, did not state a claim).

Blair argues that the ongoing denial of his accommodation request, the "illegal condition precedent" upon which Street conditioned his accommodation, and his diminishment in stature demonstrate the requisite hostility. (Docket No. 6 at 15-16.) But these facts alone, even taken as true, do not rise to the level of pervasive abuse required to state a claim. The delay in receiving the stool from the start of the semester in late August to October 20 may have been inconvenient, but it does not demonstrate "pervasive" hostility. Street's asking Blair to sign a statement about other employment and his perceived loss of status are also insufficient. Blair has not alleged a workplace "permeated with discriminatory intimidation, ridicule, and insult." Lettekey, 637 Fed.Appx. at 661. Blair's RA hostile work environment claim against SUNY will therefore be dismissed.

**C.    § 1983 Claims against Street**

Defendants argue that Street is not liable to suit pursuant to 42 U.S.C. § 1983 because the ADA and RA are comprehensive remedial schemes that preclude suit under § 1983. Blair argues that the ADA and RA are not comprehensive remedial schemes, and that a § 1983 suit is therefore permissible.

Section 1983 creates a cause of action to redress the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "[Section] 1983 does not provide an avenue for relief every time a state actor violates a federal law." City of Rancho Palos Verdes, Cal. v. Abrams, 544 U.S. 113, 120, 125 S. Ct. 1453, 161 L.Ed.2d 316 (2005). "[T]o sustain a § 1983 action, the plaintiff must demonstrate that the federal statute [allegedly violated] creates an individually enforceable right in the class of beneficiaries to which [she] belongs." Id. at 120. "Even

after this showing, 'there is only a rebuttable presumption that the right is enforceable under § 1983.'" Id. (quoting Blessing v. Freestone, 520 U.S. 329, 341, 117 S. Ct. 1353, 137 L.Ed.2d 569 (1997)). "The defendant may defeat this presumption by demonstrating that Congress did not intend that remedy for a newly created right." Id.

When determining whether a federal statute can be enforced under § 1983, the "primary emphasis [is] on the nature and extent of that statute's remedial scheme." Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 253, 129 S. Ct. 788, 794, 172 L. Ed. 2d 582 (2009). "When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." Id. (quoting Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Assoc., 453 U.S. 1, 20, 101 S. Ct. 2615, 69 L. Ed. 2d 435 (1981)).

The question of whether the ADA and RA are sufficiently "comprehensive" to bar suits under § 1983 is an unsettled one, among both the circuits and the district courts of the Second Circuit. The Second Circuit has not ruled on this matter.

### 1. ADA Claims against Street

The remedies in Title I of the ADA are drawn from those in Title VII of the Civil Rights Act. In Title VII, Congress established a remedial scheme that specifically required an exhaustion of remedies before suit could be filed. See Williams v. Pennsylvania Human Relations Comm'n, 870 F.3d 294, 298–99 (3d Cir. 2017) Every circuit to have addressed the question has found that the ADA's remedial scheme bars § 1983 claims to enforce ADA rights. See, e.g., id. ("Allowing pure Title VII and ADA claims under § 1983 would thwart Congress's carefully crafted administrative scheme by throwing open a back door to the federal courthouse when the front door is purposefully fortified.").

This Court therefore finds that Blair is precluded from bringing an action against Street under §1983 for remedies under Title I of the ADA.

### 2. RA Claims against Street

Unlike the ADA, the RA borrows its remedial scheme from Title VI of the Civil Rights Act. This Court has found that, as such, the RA is not comprehensive, and that § 1983 suits are therefore permissible. <u>Stahura-Uhl v. Iroquois Cent. Sch. Dist.</u>, 836 F. Supp. 2d 132, 146 (W.D.N.Y. 2011) ("[B]ecause the remedial scheme under Title IX and Title VI are nearly identical and because the Supreme Court has instructed that a Title IX claim can be vindicated under § 1983, this Court has no trouble concluding that the same analysis applies to Title VI, and by extension the Rehabilitation Act. Applying that analysis leads to the inevitable conclusion that the Rehabilitation scheme is not "comprehensive" and does not preclude a parallel § 1983 claim.")

Other courts in the Second Circuit agree. <u>See, e.g.</u>, <u>Williams v. City of New York</u>, 121 F. Supp. 3d 354, 370–71 (S.D.N.Y. 2015) ("Because the remedial scheme of Title II of the ADA derives from the same source as the remedial scheme of Title IX, the Supreme Court's conclusion that parallel and concurrent § 1983 claims and implied private causes of action are available under Title IX applies with equal force to Title II of the ADA. Accordingly, a plaintiff can bring a cause of action under § 1983 to enforce rights protected by Title II of the ADA.") This Court therefore finds that Blair's RA claims against Street pursuant to § 1983 are not barred.

### a. RA discrimination claim against Street (seventh cause of action)

Although Blair's § 1983 claim against Street can proceed, this Court finds that Blair has failed to state a claim for RA discrimination against Street. As discussed above, to

state a claim for RA discrimination based upon a failure to accommodate, a plaintiff must allege that "(1) plaintiff is a person with a disability under the meaning of the statute; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." McBride, 583 F.3d at 96–97.

As discussed above, this Court finds that Blair has not alleged that he was denied a reasonable accommodation. Defendants' motion to dismiss Blair's claim against Street will therefore be granted.

### b. RA retaliation claim against Street (tenth cause of action)

As discussed above, to state a claim for retaliation RA, a plaintiff must allege that (1) he engaged in a protected activity; (2) the employer was aware of the activity; (3) an adverse employment action occurred with respect to the plaintiff; and (4) a causal connection exists between the protected activity and the adverse employment action. Valtchev, 400 F. App'x at 589.

Additionally, for a § 1983 claim, a plaintiff must allege defendant's personal involvement in the violation. See, e.g., Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").

As discussed above, this Court finds that Blair has sufficiently alleged retaliation, in the form of his assignment to teach introductory courses and Soc 101. Street, as department chairperson, was responsible for determining which classes professors would teach. (Complaint, ¶ 11). Blair has thus sufficiently alleged Street's personal involvement in the alleged retaliatory action, and has stated a claim against her for retaliation under

the RA.

Defendants argue that Street is entitled to qualified immunity because she did not have reason to believe that she might be held individually liable for violations of Blair's rights. Plaintiff argues that Street was aware of her potential liability, and is therefore not entitled to qualified immunity.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982) (citing Procunier v. Navarette, 434 U.S. 555, 565, 98 S. Ct. 855, 861, 55 L.Ed.2d 24 (1978)).

To assert a qualified immunity defense, a defendant must assert that he did not know of clearly established statutory rights. Harlow, 457 U.S. at 818–19. Officials are not required to "anticipate subsequent legal developments or to predict the course of Constitutional Law." Id. at 818. "An official is only liable if the contours of the rights he allegedly violated are sufficiently clear." Id.

Defendants argue that Street is entitled to qualified immunity because she did not know that she might be held individually liable under the RA through a § 1983 lawsuit. However, the operative question is not necessarily whether Street's potential *liability* was clear, but whether the contours of the *rights* she allegedly violated were clear.

There is no reason to believe, at this stage, that Street did not know that her alleged actions would violate Blair's RA right to be free from retaliation. In 2015 and 2016, when the actions alleged in the complaint took place, this was a clearly established right.

See, e.g., Valtchev, 400 F. App'x at 589; Weixel, 287 F.3d at 148.

This Court finds that Street is not entitled to qualified immunity as to Blair's retaliation claim. Accordingly, Defendants' motion to dismiss Blair's RA retaliation claim against Street will be denied.

### c. RA hostile work environment claim against Street (twelfth cause of action).

This Court finds that Blair has failed to state a claim for a hostile work environment under the RA against Street. To state a claim for RA hostile work environment discrimination, a plaintiff must allege (1) that "the workplace is permeated with discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" and (2) that "a specific basis exists for imputing the conduct that created the hostile environment to the employer." Lekettey, 637 Fed. Appx. at 661.

As discussed above, this Court finds that Blair has not sufficiently alleged the existence of a hostile work environment. Defendants' motion to dismiss Blair's claim against Street will therefore be granted.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss Blair's claim is granted in part and denied in part. Because SUNY is entitled to sovereign immunity from suit under Title I of the ADA, this Court will dismiss all of Blair's ADA claims against SUNY (first, third and fifth causes of action). Because this Court finds that Blair has failed to state a RA claim against SUNY for discrimination or a hostile work environment, it will dismiss those claims (second and sixth causes of action). Because Blair cannot bring a § 1983 action against Street to enforce ADA rights, this Court will dismiss those claims

(seventh, ninth, and eleventh causes of action). This Court also finds that Blair has not stated a claim pursuant to § 1983 against Street for RA discrimination (eighth cause of action) or a hostile work environment (twelfth cause of action), and will therefore dismiss those claims.

This Court finds that Blair has stated an RA retaliation claim against SUNY (fourth cause of action), and against Street pursuant to §1983 (tenth cause of action). Defendants' motion to dismiss those claims will therefore be denied. Defendants will have 14 days from the entry date of this decision to file an answer to the complaint consistent with Rule 12(a)(4)(A).

## V. ORDER

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss (Docket No. 4) is granted in part and denied in part.

FURTHER, that Defendants shall file an answer to the remaining claims in the complaint within 14 days of the entry date of this decision consistent with Rule 12(a)(4)(A).


SO ORDERED.


Dated:          February 11, 2020
                Buffalo, New York


                              s/William M. Skretny
                              WILLIAM M. SKRETNY
                              United States District Judge